## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHANIESA A. BURNETT**<br>**10 Hobart Ct.**<br>**Randallstown, MD 21133** | * <br><br>* | |
| *Plaintiff,* | * | |
| **v.** | * | **Civ. Action No. 1:16-cv-1816** |
| **NATIONAL ENTERPRISE**<br>**SYSTEMS, INC.**<br>**29125 Solon Road**<br>**Solon, OH 44139** | *<br><br>*<br><br>* | |
| **Serve on:** | * | |
| **CSC-Lawyers Incorporating**<br>**Service Company**<br>**7 St. Paul Street, Ste. 820**<br>**Baltimore, MD 21202,** | *<br><br>*<br><br>* | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Chaniesa A. Burnett ("Plaintiff") by and through undersigned counsel and for her Complaint against the National Enterprise Systems, Inc., alleges as follows:

## INTRODUCTION

1.      Plaintiff Chaniesa A. Burnett brings this action seeking redress for the illegal practices of defendant National Enterprise Systems, Inc. ("NES") in connection with the collection of debts in violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (the "MCDCA"); the Maryland Consumer

Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq*. ("MCPA"); and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

2.     The Plaintiff alleges that the collection practices of NES violate the MCDCA and FDCPA because it contacted a third party in order to collect a debt allegedly owed by the Plaintiff, in violation of FDCPA § 1692c(b) and MCDCA § 14-202. By violating the MCDCA, Defendant also violated the MCPA, because the MCPA prohibits "unfair or deceptive trade practices," and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *See* MCPA § 13-301; MCPA § 13–301(14)(iii).

3.     Plaintiff seeks statutory damages, actual damages, attorneys' fees, and costs, pursuant to the MCDCA, MCPA and FDCPA.

4.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

5.     The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

6.     The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

7.     The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808 (M.D.N.C. 2011); S*prinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006);

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1692k(d), and 28 U.S.C. 1367.

9.      The Plaintiff is a natural person and resident of the State of Maryland. She is a "consumer" as defined by 15 U.S.C.A. § 1692a.

10.      Defendant NES is a corporation headquartered in Ohio and registered to do business in the State of Maryland, with a Resident Agent in Baltimore City, Maryland. Defendant NES also holds an active Collection Agency License with the Maryland Department of Labor, Licensing & Regulation.

11.      The United States District Court for the District of Maryland is the proper venue pursuant to 28 U.S.C.A. § 1391(b)(2) because the events giving rise to Plaintiff's Complaint occurred in the state of Maryland. Furthermore, Defendant carries on a regular business of debt collecting in Maryland, and its website boasts that it is "able to collect in all fifty states."[1]

## PARTIES

12.      Plaintiff Chaniesa A. Burnett is an individual who is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person allegedly obligated to pay any debt, in this case alleged overdue payments for three student loans taken out in 2003 and 2006.

13.      Defendant NES is a corporation that engages in the practice of debt collection nationwide. The NES website states that it is a "full-service debt collection

---

[1] NES, *Our History*, https://www.nes1.com/about/ (accessed May 25, 2016).

agency" that assists credit grantors ranging from financial services, retail, automotive, and telecommunications[2] in collecting debts alleged to be due from another in the State of Maryland. NES regularly collects and attempts to collect consumer debts incurred or alleged to have been incurred for personal, family, or household purposes on behalf of creditors and debt buyers, and uses the United States Mail in furtherance of its collection of debts alleged to be due another.

14.     At all relevant times, NES acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), in that it held itself out to be a law firm collecting a consumer debt allegedly owed by Plaintiff.

15.     At all relevant times, NES acted as a "Collector" within the meaning of MCDCA § 14-201 because it has attempted to collect a debt arising out of a consumer transaction with the Plaintiff.

16.     Furthermore, Defendant carries on a regular business of debt collecting in Maryland. NES's website boasts that it is "able to collect in all fifty states."[3]

## FACTUAL ALLEGATIONS

### A.     The Subject Debt

17.     Chaniesa A. Burnett allegedly incurred and later allegedly defaulted on two debts to Bank One, N.A. and one debt to JP Morgan Chase Bank, N.A., for overdue student loan payments. These three debts will be referred to collectively as the "subject debt."

18.     On or about August 23, 2003, the Plaintiff borrowed $7,500.00 through

---

[2] NES, *Our History*, https://www.nes1.com/about/ (accessed May 25, 2016).

[3] NES, *Our History*, https://www.nes1.com/about/ (accessed May 25, 2016).

an Education One Undergraduate Loan from Bank One, N.A. According to the NES Loan Payment History Report dated April 20, 2016, Bank One, N.A. charged off this account on October 1, 2015.

19.    On or about November 17, 2003, Plaintiff borrowed $6,500.00 through an Education One Undergraduate Loan from Bank One, N.A. According to the NES Loan Payment History Report dated April 20, 2016, Bank One, N.A. charged off this account on October 1, 2015.

20.    On or about March 27, 2016, Plaintiff borrowed $7,500.00 through an Education One Undergraduate Loan from JPMorgan Chase Bank, N.A. According to the NES Loan Payment History Report dated April 20, 2016, Bank One, N.A. charged off this account on October 1, 2015.

21. The subject debt was acquired by National Collegiate Student Loan Trust, which hired NES to attempt to collect the subject debt. Plaintiff is not aware of the exact date that NES acquired the subject debt, but she believes that NES began contacting her to collect the subject debt during November of 2015.

22.    NES telephoned the Plaintiff on her home phone line in November of 2015. Plaintiff does not recall the exact date of this call, but she recalls that the NES collector agreed to temporarily stop calling her until she was able to work out a way to pay pursuant to the settlement agreement offered. To the best of Plaintiff's recollection the collector offered her a settlement by which the Plaintiff would pay $4,000 down and monthly payments of $100.00 thereafter, for about four years. The Plaintiff never contacted NES regarding this proposed payment plan.

23.    During this November 2015 call, the NES collector asked Plaintiff for

6

alternative telephone numbers to reach her, and the Plaintiff declined to share another phone number and indicated that there are no other phone numbers that NES could use to call her. Plaintiff never provided NES with her cell phone number.

24.   On or about November 10, 2015, NES mailed the Plaintiff two separate letters attempting to collect two separate debts owned by National Collegiate Student Loan Trust. One letter sought a balance of $9,171.95, and the other sought a balance of $9,028.18. Both letters contained the following disclosure:

> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

25.   Despite Plaintiff's indication that NES should not call her on any telephone line other than her home telephone line, on or about December 2, 2015, NES called the Plaintiff's cell phone in an attempt to collect the subject debt. To the best of Plaintiff's recollection, NES was calling to follow up on its offer for a payment plan.

26.   When NES called the Plaintiff on December 2, 2015, Plaintiff told NES that it was calling her cell phone.

27.   NES telephoned the Plaintiff on her cell phone and home phone from different phone numbers. Sometimes the phone number would have a local area code, but sometimes the phone number would have an area code from another state.

28.   On or about April 21, 2016, NES telephoned the Plaintiff's cousin to attempt to collect the subject debt. The Plaintiff never gave NES or the original creditors for the subject debt the name or contact information for her cousin.

29.   This contact prompted the Plaintiff's cousin to send the Plaintiff the following text message:

> Hey National Enterprise Systems - a debit [*sic.*] collection service

contacted me in regards to some outstanding debt that involves YOU and our grandmother. Please contact this service to resolve this unpaid bill as soon as possible. Take care of yourself Chaniesa and have a great day.

30.     The Plaintiff is not particularly close with her cousin, making NES's contact with the Plaintiff's cousin very embarrassing to the Plaintiff.

31.     The NES call to the Plaintiff's cousin made the Plaintiff feel embarrassed because Plaintiff believes that NES gave Plaintiff's cousin the idea that she is not taking care of her finances. This particularly upset the Plaintiff because NES involved her cousin when she had nothing to do with the subject debt. The Plaintiff was also nervous that NES would contact other family members in regard to the subject debt. Because the Plaintiff's grandmother co-signed for the subject loans, Plaintiff is worried that her family thinks she is being irresponsible and letting her elderly grandmother be harassed by NES. This upsets the Plaintiff because she does not want her family to know her personal financial information.

32.     After NES called the Plaintiff's cousin regarding the subject debt, Plaintiff telephoned NES and asked how it got her cousin's telephone number. The NES collector Plaintiff spoke with simply stated, "We have a lot of numbers." This added to Plaintiff's fear that NES would continue to contact third parties in connection with the collection of the subject debt.

33.     On or about April 25, 2016, NES mailed the Plaintiff a letter attempting to collect a balance of $45,322.08 on the subject debt.

34.     On or about April 29, 2016, NES mailed a second letter to the Plaintiff attempting to collect a balance of $45,346.74 for the subject debt.

**COUNT I**
**Violation of the Fair Debt Collection Practices Act**

35.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

36.     The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5), as it allegedly arose out of a transaction for money, service or property that was primarily for personal, family and/or household purposes. Specifically, the alleged debt relates to three student loans.

37.     In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692c(b) because it communicated with the Plaintiff's cousin in connection with the collection of the subject debt.

38.     As a direct consequence of the Defendant's acts, practices, and conduct, the Plaintiff became embarrassed, nervous, worried, upset, and concerned about the potential for future contact revealing information regarding her personal financial situation to her family members.

39.     Pursuant to FDCPA § 1692k Plaintiff is entitled to statutory damages and actual damages for frustration and aggravation.

### COUNT II
### The Maryland Consumer Debt Collection Act

40.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

41.     Plaintiff incurred a debt which was primarily for personal, family, or household purposes and are therefore a "consumer transaction" as that term is defined by the Maryland Consumer Debt Collection Act.

42.     Defendant violated § 14-202(5) of the MCDCA by intentionally and

knowingly contacting the Plaintiff's cousin to collect the subject debt with knowledge that the Plaintiff's cousin does not have a legitimate business need for any information regarding the subject debt.

43.    Defendants violated § 14-202(8) of the MCDCA by withholding Plaintiffs security deposit.

44.    As a direct consequence of Defendant's acts, practices and conduct, Plaintiff suffered actual damages, and became embarrassed, nervous, worried, upset, and concerned about the potential for future contact revealing information regarding her personal financial situation to her family members.

## COUNT III
## The Maryland Consumer Protection Act

45.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

46.    Plaintiff is a consumer as defined by the MCPA, Maryland Code Annotated, Commercial Law § 13-101(c).

47.    Under § 13-301(14)(iii) of the MCPA, unfair or deceptive trade practices also include any violation of the MCDCA.

48.    As a direct consequence of Defendants' acts, practices and conduct, Plaintiff suffered actual damages, and became embarrassed, nervous, worried, upset, and concerned about the potential for future contact revealing information regarding her personal financial situation to her family members.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.    A judgment for actual damages relating to Plaintiff's frustration and aggravation pursuant to pursuant to 15 U.S.C. § 1692k(a)(1); Md. Code. Ann., Com. Law.

§ 14-203; and Md. Code Ann., Com. Law § 13-408 , in an amount currently estimated to be in excess of $75,000.00;

b.      A judgment for statutory damages required by to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00;

c.      A judgment awarding Plaintiff her costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3) and and Md. Code Ann., Com. Law § 13-408; and

d.      An order for such other and further relief as may be just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

Dated: June 2, 2016                    Respectfully Submitted,

*/s/  E. David Hoskins*
E. David Hoskins, Esq., No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
*davidhoskins@hoskinslaw.com*

*/s/ Steven B. Isbister*
Steven Isbister, Esq., No. 14123
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
stevenisbister@hoskinslaw.com